IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JESSE G. STRELOW                                                                    PLAINTIFF

vs.                                    CIVIL NO. 04-2249

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                        DEFENDANT

## MEMORANDUM OPINION

Jesse Strelow ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on February 18, 2003, alleging an onset date of January 20, 2002, due to epilepsy, joint pain secondary to the epilepsy medication, and depression. (Tr. 51-52, 60, 193-195). An administrative hearing was held on July 14, 2004. (Tr. 207, 216, 218, 223, 227-228). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on September 21, 2004, plaintiff was twenty-five years old. (Tr. 12, 209). The evidence reveals that he had an eleventh grade education, with some classroom instruction as an electrician. (Tr. 122, 211). His past relevant work ("PRW"), was as an electrician's helper. (Tr. 12, 211-212).

Plaintiff testified that he was disabled due to the effects of grand mal seizures. (Tr. 213). He indicated that he had been involved in an automobile accident in 2002, as a result of a seizure.

Plaintiff stated that he and his buddy were both thrown from the vehicle. (Tr. 213-214). Although he reported experiencing a varying number of seizures per month, plaintiff testified that he no longer sought medical treatment following a seizure, because he had no medical insurance. (Tr. 214). He was of the opinion that the doctors could do nothing for him. (Tr. 215).

Plaintiff also indicated that he had been treated for depression, due to the limitations resulting from his seizure disorder. (Tr. 220). However, since having his children, he stated that he no longer had suicidal ideations. (Tr. 221). Further, plaintiff testified that he had now come to terms with his depression. (Tr. 221).

On September 21, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 13, 17-19). After discrediting plaintiff's subjective allegations, the ALJ then concluded that he maintained the residual functional capacity ("RFC"), to perform a significant range of heavy work, but should avoid working around hazards such as unprotected heights, driving dangerous machinery, and climbing ropes, ladders, and scaffolds. (Tr. 17, 19). With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could still perform work that exists in significant numbers in the national economy, such as that of a survey worker, mail clerk, photocopying machine operator, office helper, photo finishing counter clerk, self-service laundry attendant, and dry cleaning attendant. (Tr. 19-20, 224-225).

On October 27, 2004, the Appeals Council declined to review this decision. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). The case is now before the undersigned by consent of the parties. Although both parties were afforded an opportunity to file appeal briefs,

plaintiff has chosen not to do so. (Tr. 10). As such, the case is now ready for decision.

**Evidence Presented:**

On April 10, 1998, plaintiff was hospitalized, following his first seizure. (Tr. 103-105). When the emergency technicians arrived at his home, his blood sugar level was low. However, by the time of his arrival at the hospital, his level had risen to sixty. Further, an EEG was abnormal, revealing numerous fairly frequent sulci, averaging one burst every minute or two. (Tr. 104). As such, plaintiff was diagnosed with grand mal epilepsy, and prescribed Dilantin. (Tr. 1040.

On April 23, 1998, plaintiff was admitted to the hospital for observation, due to suicidal ideations. (Tr. 117-120). Records indicate that he was depressed over his recent diagnosis of epilepsy, as he could no longer drive or work. Plaintiff also reported that he had been suffering from a "low grade" of depression for years, and stated that he was jealous of the attention his mother was paying to his stepfather. Following diagnoses of adjustment and dysthymic disorders, plaintiff was prescribed antidepressants, although no particular medication is mentioned. (Tr. 118).

On December 27, 1998, plaintiff was again treated in the emergency room for seizure activity. (Tr. 114). However, he was released home after treatment with Dilantin. (Tr. 115).

On June 16, 2001, plaintiff was hospitalized following a motor vehicle accident. (Tr. 122-163). He was reportedly driving an automobile that rolled over and ejected him from the vehicle. He suffered a cerebral concussion, multiple jagged facial lacerations, lacerations to his forearm and back, multiple contusions, and a microscopic hematuria. As such, plaintiff was kept for overnight observation, as well as for debridement and repair of his lacerations. (Tr. 124).

On June 28, 2001, Dr. R. W. Ross treated plaintiff for pain in his lower back. (Tr. 173). An

AO72A
(Rev. 8/82)

examination revealed pain in the paraspinous muscles to the right and lateral to the lumbar spine. However, x-rays were normal. As plaintiff reported a desire to return to work, Dr. Ross released him to return to regular duty, but stated that he could not work as an electrician. (Tr. 165, 173).

On January 28, 2002, plaintiff again sought treatment from Dr. Ross for his seizure disorder. (Tr. 172). Records indicate that he reported experiencing two seizures over the past year, stating that he passed out during each seizure. Further, plaintiff also complained of episodes where he developed a headache on the right side of his head, resulting in his right eye turning red. Although Dr. Ross wanted to order an EEG, plaintiff refused, stating that he did not have insurance or the money to pay for the procedure. Therefore, Dr. Ross directed him not to drive, and continued him on the Dilantin. (Tr. 172).

On March 19, 2003, progress notes from Dr. Ross indicate that plaintiff reported experiencing three seizures over the past several months, in spite of the fact that he continued to take the Dilantin as prescribed. (Tr. 169). As his neurological exam was normal, Dr. Ross opted to add Trileptal to his medications. (Tr. 169)

This same date, Dr. Ross completed a medical statement. (Tr. 171). He diagnosed plaintiff with convulsive seizures, noting that these episodes were accompanied by tongue biting, a loss of consciousness, and alteration of awareness. Plaintiff's most recent seizure was noted to have occurred on February 21, 2003. Dr. Ross noted that in January 2002, the date of plaintiff's last visit, plaintiff had reported experiencing two seizures over the previous year. (Tr. 171).

On June 10, 2003, plaintiff was treated for heartburn, indigestion, and gingival hypertrophy. (Tr. 168). Dr. Ross noted that his seizure disorder was fairly well controlled via Dilantin, but that

4

plaintiff had begun to experience side effects from this medication. As a result, he decided to wean plaintiff off of the Dilantin, and begin him on Depakote. (Tr. 168).

On August 26, 2003, Dr. Ross indicated that plaintiff had not experienced a seizure in one and one-half months. (Tr. 166). His deep tendon reflexes and motor and sensory functions were normal. Therefore, Dr. Ross diagnosed him with fairly well controlled seizure disorder, and continued him on Dilantin. (Tr. 166).

This same date, Dr. Ross completed a treated physician's seizure report, on which he indicated that plaintiff averaged one to four seizures per month. (Tr. 167). Further, he noted that plaintiff had experienced two seizures in January 2003, three in March 2003, and none in June 2003. His most recent seizure had occurred in mid-July 2003, with his most recent medication adjustment in March 2003. As for the seizures themselves, Dr. Ross reported that plaintiff lost consciousness during his seizures or "blacked out." (Tr. 167).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

5

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42

6

(8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling impairments, including epilepsy, pain, and depression. After reviewing the medical evidence and testimony of record, however, we conclude that the ALJ's determination that plaintiff's subjective complaints are not totally credible is supported by substantial evidence. Neither plaintiff's testimony nor the objective medical evidence supports plaintiff's allegations.

First, we note that plaintiff was diagnosed with grand mal epilepsy in 1998. 103-105). Following his initial diagnosis, however, plaintiff did not seek regular treatment for his condition. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).

7

In fact, he sought treatment for his epilepsy on only five occasions, including one over night stay in the hospital following an automobile accident. By June and August of 2003, Dr. Ross, plaintiff's treating physician, noted that plaintiff's seizure disorder was under fair control via medication. (Tr. 166, 168). *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). As of August 26, 2003, plaintiff indicated that he had not experienced a seizure in one and one half months. (Tr. 166).

We also note that plaintiff failed to report any physical limitations to his doctors. Although he now complains of an inability to perform numerous activities, these limitations are not documented in the record. Further, aside from seizure precautions, none of his doctors have limited his physical activities. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). Therefore, given the fact that plaintiff's disorder was responding to the medication prescribed, and the fact that plaintiff failed to complain of any physical limitations, we cannot say that the ALJ erred in concluding that plaintiff was not disabled.

Plaintiff, however, contends that his failure to seek medical treatment should be excused, due to his lack of health insurance and financial inability to afford treatment. While there is some evidence to indicate that plaintiff lacked insurance and reported an inability to pay to have an EEG performed, there is no evidence to show that plaintiff ever availed himself or attempted to avail himself of the assistance programs or free services offered to indigent individuals. (Tr. 172). *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of

8

financial hardship). Further, the record does not indicate that plaintiff even spoke to his treating doctor about the possibility of applying for discounted services. Accordingly, we cannot say that plaintiff's financial situation prevented him from obtaining medical services for his epilepsy.

As for the alleged pain in his joints, secondary to the anti-seizure medication, we can find no objective medical evidence to substantiate this claim. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). While the record does show that plaintiff was treated for back pain on one occasion, and switched from Dilantin to Depakote due to medication side effects, there is no evidence to show that these side effects continued after plaintiff's medication was adjusted. (Tr. 168, 173). In fact, the record does not even state exactly what plaintiff's side effects were. (Tr. 168). We also note that plaintiff has not been prescribed any pain medication for this alleged pain. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).

Plaintiff also alleges disability due to depression. While the record does show that plaintiff was hospitalized for suicidal ideations in April 1998, and diagnosed with adjustment and dysthymic disorders, there is no evidence to indicate that he has continued to seek treatment for this disorder. *See Edwards v. Barnhart*, 314 F.3d at 967. (Tr. 117-120). In fact, since his initial diagnosis, the evidence shows that he has not sought treatment or been prescribed medication for depression. As such, we find substantial evidence to support the ALJ's conclusion that plaintiff's condition was not disabling.

9

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his supplemental interview outline, plaintiff reported an ability to care for his personal hygiene, do the laundry, wash dishes, change the sheets, iron, vacuum/sweep, take out the trash, wash the car, rake leaves, perform garden work, shop for clothing, prepare sandwiches and frozen dinners, walk on a limited basis, go to church, watch television, listen to the radio, read, visit friends and relatives, play with his children, and collect coins. (Tr. 95-96). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Further, we can find no reason to discount the ALJ's decision to dismiss the statements of plaintiff's girlfriend, a friend, and his mother, all indicating that plaintiff had experienced between three and seven grand mal seizures over the past year, on the basis that these individuals had a financial interest in the outcome of the case. (Tr. 17). It is clear that these statements added nothing to the overall medical picture in this case. Further, the determination as to the weight given to these statements was clearly within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not

established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a significant range of heavy work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

AO72A
(Rev. 8/82)

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and his medical records. On September 16, 2003, Dr. William Payne, a non-examining, consulting physician, completed an RFC assessment. (Tr. 176-183). After reviewing plaintiff's medical records, the doctor concluded that plaintiff had no exertional limitations. However, he was of the opinion that plaintiff should avoid moderate exposure to hazards. (Tr. 179). This assessment was affirmed by Dr. Jerry Thomas on January 14, 2004. (Tr. 182).

In addition to this assessment, the ALJ also considered plaintiff's own admissions concerning his ability to perform various activities, as well as Dr. Ross' treating physician statements.[1] Then, based on the entirety of the evidence, the ALJ determined that plaintiff could perform a significant range of heavy work, limited only by his inability to work near hazards, such as dangerous or mechanical equipment. (Tr. 17, 19). Following an independent review of the record in this matter, we find substantial evidence to support this conclusion. In so doing, we note that plaintiff has not sought regular treatment for his impairments; has responded well to treatment via medication; and, has not been directed by a physician to limit his physical activities, aside from a limitation preventing him from driving.

We also find that substantial evidence supports the ALJ's finding that plaintiff can still

---

[1]However, the undersigned notes that Dr. Ross' statements make clear that he was relying on plaintiff's own reports concerning the number and frequency of his seizures. (Tr. 167, 717). As Dr. Ross had not witnessed these seizures firsthand, we cannot say that his statements were entitled to significant weight. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). In addition, we cannot say that an RFC assessment obtained from Dr. Ross would have been beneficial to the ALJ or the Court, as Dr. Ross' reports are based on plaintiff's subjective complaints, rather than the doctor's objective findings.

12

perform work that exists in significant numbers in the national economy. A VE testified that a person of plaintiff's age and experience, who has no exertional limitations, but should avoid hazards, can still perform work as a survey worker, mail clerk, photocopying machine operator, office helper, photo finishing counter clerk, self-service laundry attendant, and dry cleaning attendant. (Tr. 19-20, 224-225). The VE also stated that his testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Tr. 225). After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments that the ALJ accepted as true and were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).[2] Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

---

[2]Although the expert's testimony that plaintiff could work as a self-service laundry attendant and dry cleaning attendant, both jobs requiring him to work near dangerous machinery, is not supported by the evidence, this does not require reversal. *See Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005). The evidence reveals that the expert also found plaintiff capable of performing other positions that exist in significant numbers in the national economy. *Id*.

AO72A
(Rev. 8/82)

ENTERED this 22nd day of November 2005.

                                              /s/ Bobby E. Shepherd
                                              HONORABLE BOBBY E. SHEPHERD
                                              UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)